IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEREMIAH ANTOINE SWEENEY, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PWG-19-1289 |
| RICHARD J. GRAHAM, JR., and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |

\*\*\*

## MEMORANDUM OPINION

Petitioner Jeremiah Antoine Sweeney filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2011 conviction in the Circuit Court for Prince George's County. ECF No. 1. Respondents contend that Sweeney's Petition should be dismissed because it lacks merit. ECF No. 6. No hearing is necessary to resolve the matter. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the Court shall deny the Petition. The Court also declines to issue a certificate of appealability.

## BACKGROUND

Sweeney was convicted following a jury trial held in the Circuit Court for Prince George's County, Maryland, on June 20, 2011 through June 24, 2011. ECF No. 6-1 at 6; ECF No. 1 at 201-204.[1] Sweeney was convicted of one count of second degree murder, one count of attempted second degree murder, two counts of attempted first degree murder, and four counts of use of a

---

[1] The page numbers referenced herein in case documents refer to the ECF page numbers unless otherwise noted.

handgun in the commission of a violent offense. *Id.* After the Circuit Court merged certain offenses, Sweeney was sentenced to an aggregate sentence of life plus thirty years' imprisonment. ECF No. 6-1 at 15.

Sweeney filed a direct appeal with the Maryland Court of Special Appeals, which affirmed his sentence and conviction on October 8, 2013. ECF No. 6-1 at 42-65; ECF No. 6-1 at 88-109. The Maryland Court of Special Appeals subsequently denied Sweeney's petition for certiorari on February 4, 2014. ECF No. 6-1 at 18.

On March 11, 2014 and March 26, 2014, Sweeney filed a *pro se* petition for postconviction relief. ECF 6-1 at 110-113, 114-120. Sweeney's appointed counsel later filed a supplemental application and a second supplemental application for postconviction relief. ECF No. 6-1 at 120-163, 164-175. Sweeney's trial counsel, Justin Nunzio, testified at a post-conviction evidentiary hearing on December 5, 2016. ECF 1 at 41-154. The Circuit Court issued a written opinion on August 11, 2017 denying Sweeney's application for postconviction relief. ECF No. 6-1 at 176-187. Sweeney filed an application for leave to appeal with the Court of Special Appeals on September 8, 2017, which was denied in a per curiam opinion on April 3, 2018. ECF No. 6-1, at 188-214; 215-217. The Court of Appeals denied his petition for a writ of certiorari on June 6, 2018. ECF No. 6-1 at 22.

Sweeney filed his § 2254 Petition with this Court on May 1, 2019. ECF No. 1.

**STANDARD OF REVIEW**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted). The federal habeas statute

2

at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted); *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.*

3

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## DISCUSSION

Sweeney contends that he received ineffective assistance of counsel "because his trial lawyer did not object to the court's failure to hold a hearing to which Petitioner had a right after the court learned that Juror Number Four had visited the alleged crime scene in violation of the court's written instruction and then had discussed his observations with the other jurors." ECF No. 1 at 9. Sweeney argues that he was entitled to a presumption of prejudice that the jurors on his panel were biased, and the trial court failed to act in accordance with clearly established law.

4

Thus, Sweeney argues, his counsel was ineffective when he failed to insist on the trial court conducting voir dire of the entire jury panel. ECF No. 1 at 12-25. Respondents contend that Sweeney's claim does not meet the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, (1984). ECF No. 6.

On June 24, 2011, after the close of evidence and the jury had retired to begin deliberations, the trial judge received a note at approximately 11:13 a.m.:

> Juror Number 4 went to the crime scene yesterday to walk through the scene and couple of witnesses were there. Is this okay? There was no interaction.

ECF No. 1 at 187. The trial judge called counsel and Juror Number 4 to the bench. Juror Number 4 was questioned about his trip to the crime scene, to which he responded "I just got out and went by the scene, just basically the crime scene, Your Honor. I just wanted to get a visual because I know—I see topographical views all the time and I know that that does not give an accurate—well, there's a better way to get an accurate view, which is to see a visual, an actual visual. And that's all I did. I spoke to no one. As a matter of fact, I spoke to no one and no one saw me. But I did see a couple of witnesses that were, you know, that were there." *Id.* at 188. When asked by the trial judge if the other jurors knew he went to the crime scene, Juror Number 4 responded, "They do. But they stopped me, too, because they thought that I should stop talking and I present what I just said to you all." *Id.*

The trial judge, Sweeney's counsel, and counsel for the state proceeded to discuss the appropriate remedy. *Id* at 189-193. Sweeney's counsel advised the trial judge that he provided three options to Sweeney and it was Sweeney's preference for the entire jury to be transported to the crime scene. *Id.* at 191. Before the trial court took a recess to determine whether a trip to the crime scene was feasible, Juror Number 4 was instructed by the trial judge not to discuss anything that happened during his tour of the crime scene. *Id.* at 193. The jury was excused and was

permitted to remain together in the jury lounge. *Id*. at 193. One hour and sixteen minutes later, the trial judge and counsel reconvened to discuss the fact that transporting the jury to the crime scene was not a viable option. *Id.* at 194. Sweeney advised the trial judge that he was agreeable to excusing Juror Number 4 and permitting the remaining eleven jurors to deliberate to verdict. *Id.* at 194; 198. The trial judge advised Sweeney:

> …you have a right to have 12 jurors decide your innocence or guilt, and if you give it up then that's exactly what we're going to do, and we'll let 11 people decide your fate. All right?

Sweeney responded, "Yes, sir." *Id*. at 198.[2] The eleven-member jury proceeded to deliberate and convict Sweeney.

During the December 5, 2016 postconviction hearing, Sweeney's trial counsel, Justin Nunzio, testified that he was concerned that Juror Number 4 had disregarded the court's instructions. ECF 1 at 72. He was also concerned that Juror Number 4 had access to extraneous information concerning the layout of the crime scene because the witnesses' vantage point was an issue at trial. *Id.* at 73-74. Nunzio testified that the three options he discussed with Sweeney were to transport the jurors to the crime scene, continue with eleven jurors, or a mistrial. *Id*. at 78. Nunzio testified that he advised Sweeney that it was Sweeney's decision. *Id.* at 87. Nunzio and Sweeney discussed a mistrial. Nunzio discussed the pros and cons of all three options with Sweeney, who was part of the decision to strike Juror Number 4. *Id*. at 109.

Nunzio testified that he was willing to retry the case, but he and Sweeney talked about the jury "pretty much extensively." *Id* at 87. Nunzio testified that he felt the jury was receptive and the defense had been successful in eliciting testimony supporting their theory that another person

---

[2] The transcript reflects that "Juror Number 4" said "Yes, sir." However, the parties agreed at the postconviction hearing that the transcription was in error. ECF No. 1 at 86-87. Considering the trial judge was addressing Sweeney, it does indeed appear to be a transcription error.

at the scene was responsible for the murder. Particularly, Nunzio believed he had elicited a successful demonstration with witness, David Walls, showing that the physical evidence matched the defense theory that the fatal shot originated from David Walls' gun. *Id.* at 87-90. Nunzio testified that there was a concern that the same positive testimony and demonstration could not be replicated during a retrial. *Id.* at 90. Nunzio testified that he was also not concerned about reducing the number of jurors to eleven because of the "headway" the defense had made during the trial. *Id.* at 91. There were several eyewitnesses to the shooting that testified at trial. *Id.* at 104-105. Because of the eyewitnesses, Nunzio testified that the defense was limited in its options for a trial strategy. *Id.* Nunzio testified that he did not believe that Juror Number 4 had said anything to taint the remaining members of the jury. *Id.* at 108. "There was no present-sense impression at that time and even until today that the jury was contaminated. I just—that's the way I feel and that's the way I did feel." *Id*. at 109.

The Circuit Court issued an opinion on August 11, 2016, denying Sweeney's postconviction relief, concluding that the defense waived the issue of voir dire of the jury when counsel conferred with his client and a decision was made to proceed with eleven jurors. The Circuit Court also concluded that Sweeney failed to prove that he was prejudiced because his case was decided by an eleven-member jury. ECF No. 6-1 at 185-186.

Sweeney urges this Court to evaluate his ineffective assistance of counsel claim under *Barnes v. Joyner*, 751 F.3d 229 (4th. Cir. 2014). *Barnes* involved a juror misconduct claim on habeas review. However, the petitioner in *Barnes* did not assert an ineffective assistance of counsel claim, but rather claimed that the trial court violated his right to an impartial jury under the Sixth and Fourteenth Amendments. *Id.* at 239. The petitioner in *Barnes* argued that he was entitled to a post-verdict hearing and a presumption of juror prejudice according to *Remmer v.*

*United States*, 347 U.S. 227 (1954).  *Id.* at 247-49.  In *Remmer*, the United States Supreme Court held that when allegations of juror impartiality come to light, the trial court should "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." ("*Remmer* hearing") *Id.* at 230.  *Remmer* also created a rebuttable presumption of prejudice applied to communications or contact between a third party and a juror concerning the matter pending before the jury.  *Id.* at 229.  In *Barnes,* the Fourth Circuit held that under clearly established federal law, a presumption of prejudice must be applied, and a hearing must be held when a defendant presents a genuine allegation of communication or contact between a third party and a juror concerning the matter pending before the jury.  751 F.3d at 246.

Sweeney failed to bring a claim, either on direct appeal[3] or in his application for postconviction review,[4] that the trial court deprived him of the right to an impartial jury when it did not conduct a proper *Remmer* hearing.  Sweeney's counsel conceded this fact during the postconviction hearing.  ECF No. 1 at 133.  Sweeney thus couched the claim in his postconviction application and in the instant habeas Petition as ineffective assistance of counsel for failing to object to the trial court's failure to hold a proper *Remmer* hearing.

A similar situation unfolded in *Daniel v. W. Virginia,* 191 F.3d 447 (4th Cir. 1999) (reported in table form, 1999 WL 713865).  In that case, the petitioner failed to properly raise a claim in his federal habeas petition that he was entitled to a mistrial because of jury tampering.  The petitioner did raise a claim of ineffective assistance of counsel because his trial counsel failed

---

3   On direct appeal Sweeney claimed: (1) the trial court erred by admitting the testimony of an evidence technician concerning reasons why the spent shell casings were not tested for fingerprints or DNA evidence.  ECF No. 6-1 at 42-65.

4   Sweeney's postconviction application included thirteen claims, including eleven ineffective assistance of counsel claims, one claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and one cumulative error claim.  ECF No. 6-1 at 110-163.

to request a *Remmer* hearing, arguing that the presumption of juror prejudice applied to his claim because it involved jury tampering. *Id.* at *7. The Fourth Circuit held that the ineffective assistance of counsel analysis under *Strickland v. Washington*, 466 U.S. 668 (1984) controls, and the petitioner was not entitled to a presumption of prejudice. *Id.*

The claim properly before the Court, ineffective assistance of counsel, will therefore be analyzed under *Strickland*. Every accused enjoys the Sixth Amendment right to "the effective assistance of counsel." *Garza v. Idaho*, 139 S. Ct. 738, 743-44 (2019) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Pursuant to *Strickland*, a petitioner must demonstrate both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689). A strong presumption of adequacy attaches to counsel's conduct such that a petitioner alleging ineffective assistance must show that the proceeding was rendered fundamentally unfair due to counsel's errors. *Id*. at 689, 700. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

Sweeney argues that his counsel was deficient for failing to demand the Circuit Court conduct a more comprehensive *Remmer* hearing, questioning all twelve members of the jury. However, under *Remmer* or the Maryland equivalent,[5] the goal in conducting an evidentiary hearing is to establish sufficient prejudice to support a successful motion for a new trial, or in this case mistrial. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("[T]he remedy for allegations of

---

[5] *Nash v. State*, 94 A.3d 23 (Md. 2014).

juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."); *Billings v. Polk*, 441 F.3d 238, 245 (4th Cir. 2006) (actual bias can entitle defendant to a new trial). The record reflects that Sweeney's counsel offered him the option for the ultimate remedy under *Remmer*, a mistrial, but Sweeney voluntarily waived that remedy when he elected to proceed with an eleven-member jury. Sweeney's trial counsel explained during the postconviction hearing, at length, that the decision not to seek a mistrial involved Sweeney and was based on an evaluation of the perceived success of the defense during trial. Failure to request a mistrial is a tactical decision left to the sound discretion of counsel. *United States v. Chapman*, 593 F.3d 365, 368-69 (4th Cir. 2010). Courts applying the *Strickland* standard are required to be highly deferential to the strategic decisions of counsel. As such, Sweeney cannot show that his counsel's performance was deficient.[6]

Sweeney also fails to establish prejudice. Sweeney argues that he was prejudiced because his counsel's deficient performance resulted in an eleven-member jury.[7] ECF No. 1 at 32-33. To establish *Strickland's* prejudice prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient

---

[6] Sweeney argues that his decision to waive the 12-person jury was not "knowing, voluntary or intelligent." ECF No. 1 at 33. To the extent Sweeney is attempting to raise a separate claim, this claim was never presented to the state courts and is thus unexhausted. To the extent Sweeney claims he was prejudiced by counsel's decision to waive the 12-person jury, the record reflects that Sweeney made the decision to waive the 12-person jury. Furthermore, any decision made by counsel is entitled to deference, as counsel testified that it was his impression from Juror Number Four's testimony that the remaining jury members were not tainted.

[7] Sweeney also contends that he was prejudiced because the jurors may have discussed the crime scene visit during the recess where Juror Number 4 remained with other members of the jury. ECF No. 1 at 21, 33. However, this is an unsubstantiated allegation not supported by the trial record or any testimony during the postconviction hearing. In fact, Sweeney stated that the other jurors stopped him from talking when he first mentioned his visit to the crime scene and instead urged him to discuss it with the judge. ECF No.1 at 188. During the conversation that ensued, the trial judge then instructed Juror Number 4 not to discuss his trip to the crime scene with the other members of the jury during the recess. ECF No. 1 at 193. "A jury is presumed to follow the instructions of the court." *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir. 2004).

to undermine confidence in the outcome." *Id.* "When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Making this determination requires the court deciding the ineffectiveness claim to "consider the totality of the evidence before the judge or jury." *Id.* at 695–96.

As noted by the Circuit Court, Sweeney failed to prove that he would not have been convicted if the decision had been made by a twelve-person jury. Trial counsel testified at the postconviction hearing that several eyewitnesses to the shooting testified at trial. On direct appeal, the Court of Special Appeals found the following evidence sufficient to support the conviction:

> In the instant case the jury was presented with testimony which portrayed [Sweeney] as the shooter. He accused McDonald of stealing his marijuana, approached a gathering of McDonald and several others with a gun clip in his hand, argued loudly with McDonald and threatened that he would "kill somebody," walked back up the street toward his home while inserting a clip into a handgun, continued to shout at McDonald and dared him to "cross the gun line," and a short time later, while in front of his home, shot one into the air and then fired several shots towards McDonald and the others who were in the same area where Anderson was struck in the head and killed.

ECF No. 6-1 at 107. Considering the evidence presented to the jury, noted by the Court of Special Appeals, Sweeney cannot demonstrate that confidence in the outcome of his trial was undermined because his guilt was determined by an eleven-person jury. Accordingly, the Circuit Court's application of *Strickland* was neither contrary to, nor an unreasonable application of, federal law and Sweeney's ineffective assistance of counsel claim fails.

## CERTIFICATE OF APPEALABILITY

Having found that the Petition for Writ of Habeas Corpus does not present a claim upon which federal habeas relief may be awarded, this Court must consider whether a certificate of appealability should issue. A certificate of appealability may issue only if the applicant has made

11

a substantial showing of the denial of a constitutional right. 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S. Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Sweeney may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

      A separate Order follows.

| | |
|---|---|
|  April 14, 2022  |     /S/     |
| Date | Paul W. Grimm |
| | United States District Judge |